

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

APR 0 4 2006

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY
SHREVEPORT

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| **VICKIE C. ROBERTSON**<br>**Plaintiff** | **CIVIL ACTION NO. 5:06CV183** |
| **VERSUS** | **JUDGE STAGG** |
| **JACK STATON and GUFFEY LYNN**<br>**PATTISON, in his official capacity as**<br>**SHERIFF OF SABINE PARISH**<br>**Defendants** | **MAGISTRATE JUDGE HORNSBY**<br><br>**JURY TRIAL** |

## MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT

**LAW OFFICE OF M. SAMANTHA McALLISTER**
By: M. Samantha McAllister
Louisiana Bar Roll No. 29970
2250 Hospital Drive, Ste. 112
Bossier City, Louisiana 71111
318.741.3746
Fax 318.741.5558
Attorney for Plaintiff: Vickie C. Robertson

# TABLE OF CONTENTS

PAGE

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Table of Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Law and Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.  Defendants' Failure to Answer was Willful Rather than Inadvertent  . . . . . . . . . . . . 4

      B.  Plaintiff Will be Further Prejudiced if the Default is Set Aside . . . . . . . . . . . . . . . . . 7

      C.  Defendants Have Not Established a Meritorious Defense . . . . . . . . . . . . . . . . . . . . . . 8

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Certificate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                                                        <u>PAGE</u>

*B.R.L., Inc. v. City of New Orleans*
  2003 WL 2145962 (E.D. La., Jun. 18, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Beacon Gasoline Co. v. Sun Oil Co.*
  Not Reported in F. Supp. 2d, 73 F.R.D. 505 (W.D. La., February 10, 1977). . . . . . . . . . . 7

*Bender v. Brumley, et al.*
  1 F. 3d 271 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Davis v. Musler*
  713 F. 2d 907 (2nd Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Direct TV. Inc. v. Gagnard, et al.*
  2005 WL 1968445 (W.D. La., Aug. 16, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*E. F. Hutton & Co., Inc. v. Moffat*
  460 F.2d 284 (5th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In Re Knight*
  833 F. 2d 1515 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Matter of Dierschke*
  975 F. 2d 181 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*McNertney v. Staton, et al.*
  1989 WL 156974 (W.D. La., Dec. 27, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Nishimatsu Const. Co. v. Houston National Bank*
  515 F.2d 1200 (5th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Spencer v. Staton, et al.*
  Slip Copy, 2005 WL 3113015 (W.D. La., Nov. 18, 2005) . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. One Parcel of Real Property*
  763 F.2d 181 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATUTES

42 U.S.C. 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RULES

F.R.C.P. Rule 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

F.R.C.P. Rule 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

F.R.C.P. Rule 55 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

LR 55.1 M&W . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LOUISIANA STATUTES, RULES, AND CONSTITUTION

Article 1, §§2 & 5 of the Louisiana Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LSA C.C. 2315 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LSA-RS 14:67 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

La. C.Cr.P. 572 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## TABLE OF EXHIBITS

EXHIBIT 1: Plaintiff's Motion for Entry of Default

EXHIBIT 2: Ron Corkern Jr.'s 1st Affidavit

EXHIBIT 3: Timelines (6)

EXHIBIT 4: Transcribed Statement of Shawnnette Renee Sepulvado

EXHIBIT 5: Voluntary Statement of Shawnette Sepulvado, January 7, 2005

EXHIBIT 6: Letter from Plaintiff to Renee Sepulvado, January 31, 2005

EXHIBIT 7: Initial Report, Case No. 050194, Plaintiff, Victim

EXHIBIT 8: Initial Offense Report (Rutherford), Case No. 050194, Plaintiff Victim

EXHIBIT 9: Voluntary Statement of Vickie C. Robertson, January 31, 2005, Case No. 050194

EXHIBIT 10: Case Report from Cecil F. Carter, Jr., Private Investigator

EXHIBIT 11: Arrest Warrant (Case No. 050194)

EXHIBIT 12: Voluntary Statement of Shawnnette R. Sepulvado, February 2, 2005 (Case No. 050209)

EXHIBIT 13: Promissory Note to Plaintiff by Shawnnette Sepulvado

EXHIBIT 14: *The Sabine Index* Article, February 9, 2005

EXHIBIT 15: Transfer of Property to Plaintiff by Shawnnette Sepulvado

EXHIBIT 16: Letter from Don Burkett to Plaintiff and Sheriff Pattison, April 11, 2005

EXHIBIT 17: Expert Witness, Private Investigator Cecil F. Carter, Jr., Resume

EXHIBIT 18: Affidavit of Vickie C. Robertson

EXHIBIT 19: Affidavit of Steve Robertson

EXHIBIT 20: CD-R Recorded Statement of Shawnnette Sepulvado

**RECEIVED**

APR 0 4 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| **VICKIE C. ROBERTSON**<br>**Plaintiff** | **CIVIL ACTION NO. 5:06CV183** |
| **VERSUS** | **JUDGE STAGG** |
| **JACK STATON and GUFFEY LYNN**<br>**PATTISON, in his official capacity as**<br>**SHERIFF OF SABINE PARISH**<br>**Defendants** | **MAGISTRATE JUDGE HORNSBY**<br><br>**JURY TRIAL** |

**MEMORANDUM IN OPPOSITION**
**TO DEFENDANTS' MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT**

NOW INTO COURT, through undersigned counsel, comes Plaintiff Vickie C. Robertson,

who respectfully submits this Memorandum in Opposition to Defendants' Motion to Set Aside

Clerk's Entry of Default.

## I. INTRODUCTION

On Thursday, February 2, 2006, Plaintiff filed a Complaint alleging certain conduct by

Defendants in violation of 42 U.S.C. 1983, under the Fourth and Fourteenth Amendments to the

United States Constitution, together with violations of state law under Article 1, §§2 & 5 of the

Louisiana Constitution, and  LSA C.C. 2315.  On Monday, February 6, 2006, Rickie Steve

Robertson served a copy of said Complaint and Summons personally, pursuant to F.R.C.P. Rule 4,

upon Defendant Detective Deputy Jack Staton and Defendant Guffey Lynn Pattison.

1

On March 9, 2006, the Clerk entered a default against the Defendants at the request of Plaintiff. *See* Exh. 1, Plaintiff's Motion for Entry of Default. On March 17, 2006, Defendants filed defective document(s) including an Answer and Affirmative Defenses, Memorandum in Opposition to Plaintiff's Motion for Entry of Default Judgment,[1] along with Defense Counsel's affidavit.[2] On March 20, 2006, Defendants filed the corrective document, Motion to Set Aside Entry of a Default Judgment, based upon three arguments: (1) Defense Counsel's neglect to answer the Complaint was not willful, but instead an oversight and mere inadvertence as "someone unknown" placed the Complaint on his desk in a stack of other insignificant papers; (2) setting aside the default would not prejudice the Plaintiff, but merely require her to prove her case; and (3) a meritorious defense will be presented in accordance with the defendants' Proposed Answer and Affirmative Defenses. Def. Memo, pg. 3.

Each of these arguments fail; as is shown in detail herein, they are not supported either in fact or law. First, Plaintiff filed her complaint against Defendants, not against Mr. Corkern, and by Defense Counsel's own admission, Defendant Staton failed to even fax the complaint to his office upon receipt. Defendants' culpable conduct outweighs Mr. Corkern's oversight and mere

---

[1]The plaintiff filed a motion for entry of default. She, along with undersigned counsel (who had not been retained by Plaintiff), reviewed F.R.C.P. Rule 55(a), which reads the clerk shall enter the party's default (upon written request, LR55.1 M & W). Undersigned counsel was unable to find a form for guidance, thus Plaintiff filed this document, and presented it to the Clerk, who then entered the default.

[2]F.R.C.P. 55(c) reads the party must file a motion to set aside the default. No other pleading will be accepted, *see Guide to Practice in the United States District Court for the Western District of Louisiana*, pg. 36 of 68, **NOTE!!!**

2

inadvertence[3]. Second, and third, Plaintiff has every confidence that her case will prevail at trial and that the Defendants' defense, if any[4], would fail. However, she is ready to proceed, and this delay causes her prejudice now and in the future, as further detailed herein. As shown in more detail below, the Defendants' Motion to Set Aside Entry of a Default Judgment should be denied.

## II. LAW AND ARGUMENT

An entry of a default judgment against Defendants is a severe remedy. *See e.g. E. F. Hutton & Co., Inc. v. Moffat*, 460 F.2d 284, 285 (5th Cir. 1972). However, where, as here, a party does not respond to a properly served Complaint and ignores a duly issue and properly served Summons of a Court, a default judgment, though drastic, is the appropriate and indeed, only recourse. *See In Re Knight*, 833 F. 2d 1515, 1516 (11th Cir. 1987).

Defendant's contend that, according to Rule 55© of the Federal Rules of Civil Procedure, the Court may grant a motion to set aside entry of default upon a showing of good cause. Def. Memo, pg. 1. However, the Court has discretion to determine whether the party seeking relief has demonstrated good cause. *See* Fed. R. Civ. P. 55©, Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 2d §2694. In determining whether there is good cause, the Court should consider: (1) whether the Defendant's default was willful; (2) whether setting aside the default would prejudice

---

[3]However, it was Plaintiff, who has no background in legal studies, who realized that the deadline to answer elapsed and contacted Plaintiff's Counsel. Plaintiff telephoned the Clerk and asked how she should proceed.

[4]Defense Counsel provided Plaintiff with four exhibits: a document filed by Renee Sepulvado that has nothing to do with Plaintiff's case in chief, and three documents with Plaintiff as victim reporting the theft of the monitor (still unanswered as to why Renee was never arrested for this theft). These three documents have only strengthened Plaintiff's case.

the Plaintiff; and (3) whether the Defendant presented a meritorious defense. *United States v. One Parcel of Real Property*, 763 F.2d 181 (5th Cir. 1985), *see also B.R.L., Inc. v. City of New Orleans*, 2003 WL 2145962 (E.D. La., Jun. 18, 2003).

The Fifth Circuit has held that the these three factors mentioned are not talismanic, nor are they exclusive. *Matter of Dierschke*, 975 F. 2d 181, 184 (5th Cir. 1992). Whatever other factors are employed, the imperative is that they be regarded as a means of identifying circumstances which warrant the finding of "good cause" to set aside a default. The Court's determination as to "good cause" is informed by equitable principles. *Id.* The willful failure to answer, the lack of any meritorious defense, and the existence of resulting prejudice to the plaintiff, depending on the circumstances, typically can provide adequate case for the court to deny a motion to set aside a default. *Id.*

Plaintiff contends there is no a reasonable excuse sufficient to conclude there is good cause for failing to respond timely to the Complaint. Defendant Staton's willful failure to answer, Defendants failure to yet present a defense to Plaintiff's claims, and the continual prejudice to Plaintiff, merits the granting of a default judgment in favor of Plaintiff.

A.  Defendants' Failure to Answer was Willful Rather than Inadvertent

In their motion, Defendants argue that their failure to timely file an answer was inadvertent rather than willful. Mr. Corkern contends that his oversight is to blame. However, F.R.C.P. Rule 12(a)(1)(A) reads "defendant shall serve answer," not "attorney for defendant shall serve answer." *See* F.R.C.P. Rule 12(a)(1)(A).   Therefore, it was the Defendants' duty to send the complaint to

counsel in a timely fashion. Defense counsel claims that his office received the faxed complaint almost two weeks later, on February 17, 2006, from Defendant Staton. Corkern's Affidavit, pg. 1. No mention was made of Defendant Pattison's response, if any.

Further, Defendant Staton was represented by Counsel when the default was entered; not necessarily on this particular lawsuit, but in all other times in which Defendant Staton has been sued in this capacity. Moreover, it may be assumed that Defendant Staton understands the process of responding to lawsuits in federal court. As early as 1989, Defendant Staton has been a party to a lawsuit in the Western District of Louisiana, with Mr. Corkern acting as his attorney (most recently, he was sued in 2004, which ended in summary judgment dismissal on November 18, 2005). *See Spencer v. Staton, et al.*, Slip Copy, 2005 WL 3113015 (W.D. La., Nov. 18, 2005); *see also McNertney v. Staton, et al.*, 1989 WL 156974 (W.D. La., Dec. 27, 1989)(Magistrate Payne held in favor of the Plaintiff's §1983 claims for false arrest and dismissed Staton's qualified immunity claim), and *Bender v. Brumley, et al.*, 1 F. 3d 271 (1993).

Defense Counsel further explains that on February 17, 2006, the complaint was faxed to the attention of his secretary, Tina Coffey, and placed in a stack of unimportant papers by "someone unknown." Corkern's Affidavit, pg. 1. While this may be true, there is simply no justification for Defendant Staton's actions. His conduct does, in fact, rise to such a level that he should not be allowed to defend this lawsuit. Defendant Staton showed a lack of concern for this lawsuit, just as he did when he set the wheels in motion for the false arrest of Plaintiff.

Defense counsel's immediate reaction only compounds the carelessness and negligence that

5

should be frowned upon by this Honorable Court.  First, he filed incorrect documents, which would have taken only a few moments to read the rules and check for which documents he should have filed.  Second, Mr. Corkern notarized his own affidavit.[5]  *See* Exh. 2, Ron Corkern, Jr.'s 1ˢᵗ Affidavit.  It may be assumed that an attorney may not notarize his own signature on an affidavit filed in federal court, nor can one <u>ever</u> notarize one's own signature.  This behavior, as well, should be inexcusable.

Plaintiff is well aware of the impossible hurdle she faces in proving a heightened level of willful misconduct by Defendants which deserves the drastic remedy of a default judgment.  Defendant Staton's misconduct has already damaged Plaintiff, thus this recent behavior only compounds his lack of concern for her.  Nevertheless, Staton's negligence was only enabled once Defense Counsel realized that the Clerk had entered the default and he filed defective documents , and further,  notarized his own signature.  While no attorney should be expected to follow the rules as if one were conforming to the restrictions  in the Third Reich, the rules are in place for a reason, and should, to some degree, be adhered to.[6]

Plaintiff simply requests that the Defendants be held to the same level of conduct as she is, that is, they should be held responsible for *all* of their careless actions.  Defendant Staton's actions were not inadvertent; he fully was aware that this lawsuit should have been faxed or sent to his attorney within the deadlines.  He simply made a choice not to do so.  For this reason, his conduct

---

[5]This document is attached.  Once Mr. Corkern filed the corrective documents, the only page in which he changed was that of which he notarized his own signature, expecting this Court to ignore his carelessness.

[6]Plaintiff's counsel reminds this Court that she was privy to Magistrate Hornsby's speech about the *Guide to Practice* and *Uniform Local Rules* on the day she was sworn in on October 21, 2005.  In that speech, Magistrate Hornsby warned the inductees to learn the rules well and abide by them.

was wilful instead of inadvertent.

## B. Plaintiff Will be Prejudiced Even Further if this Default is Set Aside

The Eastern District of Louisiana held that Fifth Circuit decisions have stated "a clear preference for parties having their day in Court, rather than rigidly enforcing the Rules concerning timeliness; however, we cannot overemphasize the importance of procedures enacted to ensure speedy as well as fair trials." *Beacon Gasoline Co. v. Sun Oil Co.*, Not Reported in F. Supp. 2d, 73 F.R.D. 505 (D.C. La. February 10, 1977). Thus, as a matter of equitable discretion, often a trial on the merits is preferred over the harsh remedy of default. However, in Plaintiff's case a speedy trial is necessary. The 2nd Circuit determined the requirement for proof of prejudice to the Plaintiff is that a delay will "result in the loss of evidence, create increased difficulties of discovery, or provide a greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F. 2d 907, 916 (2nd Cir. 1983). Plaintiff's case is based solely on fact and material witness testimony that becomes more difficult to obtain each day of this delay.[7]

Furthermore, Plaintiff has asked this Honorable Court to enter an enjoinder against Defendants and an expungement of her criminal record. Plaintiff cannot re-apply for a job as a teacher, as she was arrested for felony theft (LSA-RS 14:67(B)(1)) and it was highly publicized in the district. Further, the District Attorney failed to prosecute and the time limitations for failure to prosecute are four (4) years since the felony is not necessarily punishable by imprisonment at hard labor (La. C.Cr.P. 572(2)). Thus, the actual charge could be prosecuted within the next two (2)

---

[7]Renee's mother, Kathy Sharbeno, has not been located. Renee has recently moved, and a second statement has yet to be obtained. Sherri's whereabouts are unknown, though thought to be in the Many area.

years.  Without an actual dismissal, an expungement would be difficult.  The false arrest is preventing her from now, and in the future, becoming gainfully employed.

C.  Defendants Have Not Established a Meritorious Defense

To enter a default judgment, there must be a sufficient basis in the pleadings for granting the Plaintiff's request for relief. *Nishimatsu Const. Co. v. Houston National Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  A default judgment should not be entered when there is an alleged meritorious defense and substantial amounts are involved. *Direct TV, Inc. v. Gagnard, et al.* 2005 WL 1968445 (W.D. La. Aug. 16, 2005) .  Defendants did not tender a pleading demonstrating a meritorious defense.

Defendants' submit a variety of affirmative defenses, none with evidence meeting the burden to dismiss the claims.  One of these is the affirmative defense of qualified immunity as to Plaintiff's federal and state law claims.  Def.'s Propose Answer and Affirmative Defenses, Fourth Defense. To this date, nothing in any of the documents or facts provided prove that Defendant Staton had probable cause to arrest Plaintiff.  Staton's conduct violates established law in that he deliberately abused plaintiff.  Detective Staton did not even obtain the arrest warrant for Plaintiff; Renee Sepulvado allegedly did.   Thus, qualified immunity is not available.

Plaintiff was falsely accused of a crime the Defendants know she did not commit by knowingly and recklessly providing false information to a magistrate, by  manufacturing evidence, and then, finally, by deliberately arresting Plaintiff in accordance with what should have been a "civil matter," that is, a civil eviction process,  not even a criminal one. The Defendants, thus far, have

8

simply not met their burden to dismiss their state law claims.

Defendants provided a list of general denials, of which most are now disputed as fact as follows:  *See* Exh. 3, Timelines,[8] Exh. 18 & 19, Affidavits of Vickie C. Robertson and Steve Robertson (attesting to the factual information provided in the Timelines).

1. Renee Sepulvado and plaintiff's son, Kyle Robertson, lived together on the property. She did, in fact, lease the mobile home at 61 Rutherford Lane. Plaintiff helped pay the bills on the property as Renee and Kyle did not have jobs. *See* Exh. 4, Transcribed Statement of Shawnnette Renee Sepulvado, pg. 5, lns. 70-72, lns. 105-106.

2. Kyle purchased the 1993 Dodge Dakota Pickup Truck which was registered in Renee's name for insurance purposes. *See* Exh. 4, pg. 5, lns. 97-98. When Renee moved out, the truck was inoperable. *See* Exh. 4, pg. 12, lns. 246-247.

3. Renee moved out of the mobile home on December 30, 2004. *See* Exh. 5, Voluntary Statement of Shawnette Sepulvado, January 7, 2005, and Exh. 6, Letter from Plaintiff to Renee Sepulvado, January 31, 2005. Renee owed Plaintiff money when she left. *See* Exh. 4, lns. 105-106. Sherri and she had been living together on the property together.

4. On January 28, 2005, Gloria Stewart, at the "HUD" office in Many, informed Plaintiff that she should speak to Defendant Staton about the monitor. Plaintiff spoke to Defendant Staton that same day about the monitor when Detective Staton told her to give him a few days to see if he could

---

[8]These timelines are based upon the statements of Plaintiff, Steve Robertson, and Renee Sepulvado. These timelines are by no means an attempt to amend the complaint. This simply provides detail to all of the dates and activity provided to Defense Counsel in the Complaint, and further, shows what Plaintiff intends to prove at a default judgment hearing to prove her case in chief.

get it back from Renee.

5.   Deputy Larry Rutherford was <u>not</u> dispatched to Plaintiff's home to obtain a written statement about the theft.   Plaintiff asks this Honorable Court to carefully read the initial offense report provided by Defense Counsel.   It reads:

> "Received call at above address to stand by while Sepulvado gets her things out of the trailer per SP-3. While standing by, Robertson came to me and said that she wanted to file charges on Sepulvado for stealing a video monitor. I advised Robertson to see SP-3 tomorrow."   *See* Exh. 8, Initial Offense Report (Rutherford), Case No. 050194, Plaintiff Victim.

SP-3 is Defendant Staton, who apparently called Deputy Rutherford and requested him to assist Renee at 61 Rutherford while she removed her items from the mobile home.   While Rutherford was "standing by," Plaintiff approached him about making the statement on the stolen monitor. Rutherford informed her to contact Defendant Staton the next day.   Plaintiff insisted she be allowed to make a statement that day, and, reluctantly, Rutherford allowed her to do so.   Rutherford was <u>never</u> dispatched for the purpose of allowing Plaintiff to make a statement about the stolen monitor. *See* Exh. 7, Initial Report, Case No. 050194, Plaintiff, Victim, and Exh. 8 (these two documents were attached together, alleging they were one).

6.   Justice of the Peace Mike Tarver made a statement to Plaintiff's expert witness, Private Investigator Cecil F. Carter, Jr., detailing his procedure for signing warrants. This statement verifies any prior statements Plaintiff made in her complaint about Mr. Tarver. *See* Exh. 10, Case Report

from Cecil F. Carter, Jr., Private Investigator.[9]

7. Plaintiff's counsel has been bewildered by the appearance of the Case Number: 050194

on Plaintiff's arrest warrant (*See* Exh. 11, Arrest Warrant (Case No. 050194)), as the Case Number

on Renee's statement is Case Number: 050209 (*See* Exh. 12, Voluntary Statement of Shawnnette

R. Sepulvado, February 2, 2005 (Case No. 050209)). Defense counsel provided three documents

which have "revealed" the mystery of this number. Case Number: 050194 is the number assigned

to the documents in which Plaintiff reported the theft of the monitor by Renee, and in which Plaintiff

was the victim (*See* Exhs. 7-9). Thus, Defendants are correct in their denial of Paragraph 5 of said

complaint which reads:

> On February 2, 2005, Plaintiff was arrested in connection
> with an investigation by an officer of the Sabine Parish
> Sheriff's Department, Detective Deputy Jack Staton, into a
> complaint initiated by Shawnette Renee Sepulvado ("Renee").

According to new evidence, provided by Defense Counsel, *See* Exhs. 7-9, it should read as

follows:

> On February 2, 2005, Plaintiff was arrested in connection
> with an investigation by an officer of the Sabine Parish
> Sheriff's Department, Detective Deputy Jack Staton, into a
> complaint initiated by herself as the victim.

8. On February 8, 2005, Renee signed a promissory note for $240.00 to pay for monies owed

on the rent, and signed over the truck to Steve Robertson. *See* Exh. 13, Promissory Note to Plaintiff

---

[9]Mr. Carter's resume is provided in Exh. 17. The statement was taken on January 24, 2006 before the complaint was drafted.

11

by Shawnnette Sepulvado.

9. On February 9, 2005, Plaintiff's arrest was reported in *The Sabine Index. See* Exh. 14, *The Sabine Index* Article, February 9, 2005.

10. On February 15, 2005, Renee paid the $240.00 and abandoned the property. *See* Exh. 15, Transfer of Property to Plaintiff by Shawnnette Sepulvado.

11. On April 11, 2005, Don Burkett, District Attorney for the 11th Judicial District, wrote a letter to Sheriff Pattison and Plaintiff that the case would not be pursued in criminal court, instead, "the matter appears to be of a civil matter." *See* Exh. 16, Letter from Don Burkett to Plaintiff and Sheriff Pattison, April 11, 2005.

Defendants present two defenses which seem viable at first glance. First, Renee moved out because Plaintiff's sons' Kyle and MacDaniel Robertson placed a security camera in Renee's bathroom. Defense counsel has introduced a statement by Renee that she had the camera and someone broke into her car and tampered with the camera.[10]  Plaintiff never once mentioned the camera to Detective Staton, only the monitor. Plaintiff had the camera in her possession at all times. Detective Staton only had the monitor and there is no mention of any investigation into the alleged "camera" incident. Further, the simple fact remains–this statement has nothing to do with Plaintiff's case in chief. What it does prove for Plaintiff's case is that Renee knew Detective Staton and spoke with him on several occasions about Plaintiff's sons, which may, in fact, provide the motive for his

---

[10]If the default judgment is set aside, Plaintiff's counsel thoroughly intends to employ a handwriting expert to examine this document. Renee has spelled her own name incorrectly (the correct spelling is SHAWNNETTE) at least three times on this document and Renee, herself, has stated that she knows how to spell her name. *See* Exh. 4, pg. 22, lns. 467 and 473.

12

conspiracy and the malicious acts that followed and led up to this suit.[11]

Second, Defendant Staton claims that he never told Renee that Plaintiff would be arrested. Instead, he typed a warrant charging Plaintiff with the crime of felony theft, which he gave to Renee (Defendant Staton conveniently left his name off the warrant). He then told Renee if she had the Justice of the Peace sign the warrant, he would arrest Plaintiff. Thus, Defendant Staton expects this Court to believe that the Sabine Parish Sheriff's Department makes it a policy to type warrants charging persons with a crime, give the warrant to the victim to take to a Justice of the Peace to sign and, upon return, with the signed warrant, the deputy will arrest the person charged. This argument is unfounded, unprecedented, and ridiculous.

In conclusion, Plaintiff currently has one expert witness retained, local private investigator Cecil F. Carter, Jr. *See* Exh. 17, Expert Witness, Private Investigator Cecil F. Carter, Jr., Resume. On January 24, 2006, he took the recorded statement of Shawnnette Renee Sepulvado and wrote a report of a conversation with Justice of the Peace Mike Tarver. Plaintiff's counsel has enclosed the written documents with this memorandum, and has provided Defense Counsel with a CD-R of the recorded statement. *See* Exh. 18, CD-R Recorded Statement of Shawnnette R. Sepulvado.[12] These statements will be used at a hearing to determine damages if the default judgment is granted. In this statement, Renee states almost five (5) times that Plaintiff was not to be arrested, nor did she ever

---

[11]Renee details in her statement another incident prior to her vacating Plaintiff's property in which she reported Trent Robertson to Detective Staton for "scaring her and her mother in her car with his car." *See* Exh. 4, pg. 4, lns. 138-139, pg. 26, ln. 554.

[12]A copy of this statement shall be left in the file with the Clerk of Court.

want her arrested, and that she had never seen any document with the word "WARRANT." *See* Exh. 4, pg. 17, lns. 369-370, lns. 375-376, pg. 18, lns. 383-384, pg. 20, lns. 423-426, pg. 23, lns. 493-494, pg. 26, lns. 573-574,  Moreover, she stated that she had never met Mike Tarver. *See* Exh. 4, pg. 19, lns. 410-411, pg. 20, pg. 27, ln. 576.  Plaintiff contends that the claims made in her complaint were verified by these statements which were made prior to writing the complaint, and that the Defendants has no meritorious defense to such.

### III.  CONCLUSION

In conclusion, Defendants and Defense Counsel have presented no reasonable excuse sufficient to conclude that they had good cause for failing to respond timely to the Complaint. Defendant Jack Staton waited nearly two weeks before he even bothered contacting his attorney, that same attorney who has represented him repeatedly.  No mention is even made of Sheriff Guffey Pattison's actions, and further, no blame is laid upon him.  Evidently, Sheriff Pattison has determined that if he puts his head in the sand, the storm will blow over him.  Counsel's mere carelessness in filing an Answer and Affirmative Defenses, with an Memorandum in Opposition to Plaintiff's Motion for Entry of Default Judgment without consulting the Federal and Local Rules and even further, notarizing his own signature on a federal pleading,  demonstrate not only willfulness and prejudice to Plaintiff, but further, how little respect all parties have for Plaintiff and this Honorable Court.

For these reasons above and with this evidence, Plaintiff urges this Court deny the Defendants' Motion to Set Aside Clerk's Entry of Default and grant her a Motion for Default

Judgment.

Law Office of M. Samantha McAllister
2250 Hospital Drive, Ste. 112
Bossier City, Louisiana 71111
318.741.3746
Fax 318.741.5558

By: _____
M. Samantha McAllister, No. 29970
Attorney for Plaintiff, Vickie C. Robertson

## **CERTIFICATE**

**I HEREBY CERTIFY** that a copy of the above and foregoing has been this day served upon all counsel of record in this proceeding as shown below by Federal Express, all expense prepaid to:

Ronald E. Corkern, Jr.
Corkern & Crews, L.L.C.
616 Front Street
PO Box 1036
Natchitoches, Louisiana 71458-1036

Bossier City, Louisiana this 4ᵗʰ day of April, 2006.

_____
M. Samantha McAllister, Of Counsel

16